EFiled: Aug 10 2020 06:44PM EDT
Transaction ID 65837540
Case No. 2020-0518-PAF

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FIRST LANDING FUND, LLC and INDIE DIVERSIFIED ABSOLUTE RETURN FUND, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2020-0518-PAF |
| PROPHECY TRADING ADVISORS GP, LLC, PROPHECY TRADING ADVISORS, LP, PROPHECY SPECIAL OPS GP, LLC, and PROPHECY SPECIAL OPPORTUNITIES FUND, LP, | ) ) ) ) ) ) ) | **PUBLIC VERSION EFILED ON AUGUST 10, 2020** |
| Defendants. | ) | |

## PLAINTIFF'S OPENING PRE-TRIAL BRIEF

R. Judson Scaggs, Jr. (#2676)
Aubrey J. Morin (#6568)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT ....................................................................1

STATEMENT OF FACTS .............................................................................3

    I.     The Prophecy Funds and Their Investment Strategies..........................3

    II.    There is Credible Evidence to Infer Wrongdoing, Mismanagement or Breach of Duty by Prophecy in Connection with Its Relationship with Smith ..........................................................................5

    III.   There is Credible Evidence to Infer that ███████████ Its ███████████████████████████ ...............................12

        A.    Prophecy ██████████████ .............................12

        B.    █████████████████████ ████████████...............................12

        C.    The Implications of ████████████ .............................15

        D.    Prophecy █████████████████ ██████████████████████ ██████████████████.....................................17

    IV.   There is Credible Evidence to Infer Wrongdoing, Mismanagement or Breach of Duty by Prophecy in Connection with Prophecy's Relationship with ███████ ...............................................................19

    V.    There is Credible Evidence to Infer Wrongdoing, Mismanagement or Breach of Duty by Prophecy in █████████████████ ████████, Which Represents the Only Value Remaining in the Prophecy Funds .........................................................................................23

    VI.   Plaintiff's Section 17-305 Demands .................................................28

    VII.  Defendants Rejected Plaintiff's Section 17-305 Demands ................32

i

ARGUMENT ................................................................................................33

I.   Plaintiff Has Stated a Proper Purpose for Seeking Inspection of
     Prophecy's' Books and Records .........................................................33

     A.   Investigating Potential Wrongdoing, Mismanagement or
          Breach of Duty is a Proper Purpose for Examination of
          Partnership Books and Records ..................................................33

     B.   Plaintiff Has Presented a Credible Basis for Inspection of
          Prophecy's Books and Records ..................................................36

II.  Section 17-305 Supports Production of the Books and Records
     Sought.................................................................................................46

     A.   A Limited Partner May Inspect All Documents Reasonably
          Related to Its Interests as a Limited Partner ............................46

     B.   The Categories of Documents Plaintiff Seeks Reflect Each
          of the Matters at Issue, and Are Reasonably Related to Its
          Interests as a Limited Partners in the Prophecy Funds............47

CONCLUSION ..........................................................................................62

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page**

*Amalgamated Bank v. UICI*,
    2005 WL 1377432 (Del. Ch. June 2, 2005)........................................................48

*Boxer v. Husky Oil Co.*,
    429 A.2d 995 (Del. Ch. 1981) ............................................................................35

*Carapico v. Phila. Stock Exch., Inc.*,
    791 A.2d 787 (Del. Ch. 2000) ......................................................................35, 37

*City of Westland Police & Fire Ret. Sys. v. Axcelis Techs., Inc.*,
    1 A.3d 281 (Del. 2010) .......................................................................................33

*Cohen v. El Paso Corp.*,
    Civ. A. 551-N, 2004 WL 2340046 (Del. Ch. Oct. 18, 2004) ............................37

*DFG Wine Co., LLC v. Eight Estates Wine Holdings, LLC*,
    Civ. A. No. 6110-VCN, 2011 WL 4056371 (Del. Ch. Aug. 31,
    2011) ....................................................................................................................49

*Dohmen v. Goodman*,
    2020 WL 3428213 (Del. June 23, 2020) ............................................................35

*Elow v. Express Scripts Hldgs. Co.*,
    2017 WL 2352151 ..............................................................................................34

*Freund v. Lucent*,
    Civ. A. 18893, 2003 WL 139766 (Del. Ch. Jan. 9, 2003).................................37

*Grimes v. DSC Commc'ns Corp.*,
    724 A.2d 561 (Del. Ch. 1998) ...........................................................................48

*Henry v. Phixios Holdings, Inc.*,
    Civ. A. No. 12504-VCMR, 2017 WL 2928034 (Del. Ch. July 10,
    2017) ....................................................................................................................49

*Holman v. Nw. Broad, L.P.*,
    2007 WL 1074770 (Del. Ch. Mar. 29, 2007) ....................................................47

iii

*In re Amerisourcebergen Corp. Section 220 Litig.*,
  2019 WL 589099 (Del. Ch. Feb. 13, 2019) ........................................................48

*In re Boston Celtics Ltd. P'ship Shareholders Litig.*,
  1999 WL 641902 (Del. Ch. Aug. 6, 1999) .........................................................35

*In re Lululemon Athletica Inc. 220 Litig.*,
  2015 WL 1957196 (Del. Ch. Apr. 30, 2015)......................................................34

*Khanna v. Covad Commc'ns Grp., Inc.*,
  2004 WL 187274 (Del. Ch. Jan. 23, 2004).........................................................34

*KT4 Partners LLC v. Palantir Techs, Inc.*,
  203 A.2d 738 (Del. 2019) ...................................................................................52

*Marmon v. Arbinet-Thexchange, Inc.*,
  2004 WL 936512 (Del. Ch. Apr. 28, 2004)........................................................33

*Nodana Petroleum Corp. v. State ex rel. Brennan*,
  123 A.3d 243 (Del. 1956) ...................................................................................33

*Paraflon Investments, Ltd. v. Linkable Networks, Inc.*,
  2020 WL 1655947 (Del. Ch. Apr. 3, 2020)........................................................52

*Paul v. China MediaExpress Holdings, Inc.*,
  2012 WL 28818 (Del. Ch. Jan. 5, 2012)................................................34, 35, 41

*Ret. Sys. v. Countrywide Fin. Corp.*,
  2007 WL 2896540 (Del. Ch. Oct 2, 2007), *order clarified,* 2007
  WL 4373116 (Del. Ch. Dec. 7, 2007)..................................................................35

*Sec. First Corp. v. U.S. Die Casting & Dev. Co.*,
  687 A.2d 563 (Del. 1997) ...................................................................................34

*Seinfeld v. Verizon Commc'ns, Inc.*,
  909 A.2d 117 (Del. 2006) ..............................................................................33, 34

*Soleno Inc. v. Magic Sliders Inc.*,
  Civ. A. No. 17321, 1999 WL 959185 (Del. Ch. Sept. 27, 1999),
  *aff'd*, 750 A.2d 530 (Del. 2000) ........................................................................49

*Thomas & Betts Corp. v. Leviton Mfg. Co.*,
    681 A.2d 1026 (Del. 1996) ..................................................................33

**Rules and Statutes**

6 Del. C. § 17-305 ..........................................................................................46

6 Del. C. § 17-1001 ........................................................................................36

## PRELIMINARY STATEMENT

Plaintiff brings this action to compel the inspection of partnership records pursuant to Section 17-305 to attempt to assess the alarming events that have recently befallen the funds in which it and other limited partners have investments totaling nearly $400 million.

As explained below, there is evidence to establish a credible basis from which the Court can infer that:

- The general partner of Prophecy Trading Advisors, LP ("PTA") caused the funds to ██████ ████████████████████████████████, which was controlled by Brenda Smith, with whom the owner and manager of the PTA's general partner, Jeffrey Spotts, had an undisclosed ██████ and professional relationship;

- The ████████████ ███████████████ ██████████████████████and, within months of a ████████████ Smith was arrested and charged with running a $100 million Ponzi scheme;

- Just months before Smith's arrest, ██████████████████████████ ████████████████████████████ ██████████, in an apparent undisclosed related-party transaction;

- The timing and terms of that related-party transaction, as well as a subsequent ████████████████████████████ call into question whether PTA's ██████████ ████████████████ was *bona fide*;

- ████████████████████████████████████████████ ██████████;

- ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████

- ███████████████████████████████████████████ ███████████████████████████████████████████ ██████;

- Prophecy made ████████████████████████████ ████████████████████████, likely in violation of its own risk management and concentration limits, as well as its duties to investors;

- Prophecy allocated ███████████████████████ ██████████████ likely in violation of PTA's limited partnership agreement, as well as Prophecy's duties to investors;

- Prophecy's favorable treatment of ███████████████ ████████████████████████, raises the specter of a *quid pro quo* in exchange for ████████████████████████ ███████████████████████████████████████████ ██████;

- Using Prophecy Funds' capital, ██████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████

- Prophecy's failure to maintain control of ██████████████ is likely a breach of Prophecy's representations in its private placement memoranda, as well as Prophecy's duties to investors.

Against the backdrop of this evidence, the question is not whether Plaintiff has presented a "credible basis" to infer potential mismanagement or misconduct – the lowest burden of proof in Delaware law. The better question is whether Defendants' continued refusal to provide the demanded records is frivolous and merely a bad faith delay tactic to impede Plaintiff and other investors from uncovering further damaging information.

2

In light of these facts, Plaintiff's information demands are proportional to the scope and complexity of the matters at issue in this atypical books and records case. Apart from a handful of requests that Plaintiff is withdrawing in an effort to refine its demands and avoid unnecessary argument, each and every category of documents in the demand is necessary and essential to Plaintiff's proper purpose of investigating potential misconduct, mismanagement or breach of duty by Prophecy in its disastrous oversight of the Prophecy Funds. Accordingly, the Court should grant Plaintiff's inspection demands in their entirety.

## STATEMENT OF FACTS

### I.      The Prophecy Funds and Their Investment Strategies

Prophecy Asset Management, LP, the investment manager for PTA and Prophecy Special Opportunities Fund, LP ("PSO" and, together with PTA, the "Prophecy Funds"),[1] held itself out to investors as expertly managing risk in its funds in several different ways.

For one, .[2]

---

[1] Defendants, together with Spotts and Prophecy Asset Management, LP are also referred to herein as "Prophecy."

[2] Exhibit A, April 1, 2014 Private Placement Memorandum of PTA, IDARF-00003467-3523, at IDARF-00003476-77.

As of December 2019, for instance, PTA had ████████████████████.[3] PTA also employed a "first-loss" strategy, in which any losses in investments by a given sub-advisor would first be debited against that sub-advisor's at-risk capital, thereby limiting investors' downside risks. In exchange for shouldering this first-loss risk, the sub-advisor received a higher-than-typical share of profits on investments. PTA imposed risk limits to prevent any single sub-advisor from taking excessive financial risk with the leverage that was provided by Prophecy within the trading account. In addition, concentration limits guarded against giving any single sub-advisor an outsized allocation on the platform, so as to maintain a diversification of capital and risk amongst sub-advisors and the various investment strategies each individually pursued.

PSO likewise allocates capital to sub-advisors to execute differing investment strategies.[4] Unlike PTA, PSO does not employ a "first-loss" model, and it generally ███████████████ Like PTA, however, Prophecy employed ██████████████████████████████████

---

[3] Exhibit B, Dec. 2019 PTA Fact Sheet, IDARF-00003526-3531, at IDARF-00003530.

[4] Exhibit C, March 1, 2019 Private Placement Memorandum of PSO, IDARF-00003404-3466, at IDARF-00003407-08, IDARF-00003411.

properly allocated, including by enforcing limits on concentration to avoid SOF becoming too heavily weighted toward a given strategy or sub-advisor.[5]

Given the structure and investment objectives of the Prophecy Funds, therefore, the processes employed by Prophecy to vet, select and retain sub-advisors were crucial. Equally as important were the Prophecy Funds' policies, including compliance policies and procedures, governing risk and concentration limits. Jeffrey Spotts ("Spotts")[6] is responsible for all of these policies and processes.

## II. There is Credible Evidence to Infer Wrongdoing, Mismanagement or Breach of Duty by Prophecy in Connection with Its Relationship with Smith

While unknown to IDARF[7] at the time, PTA █████████████████

████████████████████████████████████████

---

[5] *See id.*

[6] Spotts controls the Defendants as well as the Prophecy Funds' Investment Manager, Prophecy Asset Management, LP. Accordingly, unless otherwise noted herein, Spotts's statements are attributed to Defendants.

[7] Representatives of First Landing Fund, LLC ("First Landing"), and First Landing's investment manager, Vantage Consulting Group ("Vantage"), had numerous communications with representatives of PTA's general partner concerning the facts at issue in this matter. Vantage has an investment advisor relationship with a significant number of investors and limited partners in PTA, including funds affiliated with plaintiff IDARF's managers, and Vantage was in regular communication with IDARF concerning the facts at issue in this matter. Plaintiff expects to call the Chairman and CEO of Vantage, Mark T. Finn, to testify concerning his communications with representatives of PTA, principally Jeffery Spotts, and his communications with representatives of IDARF.

██████████████. ████████████████████████████

██████████████████████▌██████████████████████████

Based on the limited information Prophecy has made available to IDARF, it appears Prophecy ████████████████████████████████████

██████████████████████. ████████████████████

██████████████████

On August 27, 2019, Smith was arrested and charged criminally in connection with an alleged $100 million securities fraud scheme.[9]  Smith was also charged civilly with securities fraud by the Securities and Exchange Commission (the "SEC").[10]  Smith is currently incarcerated awaiting trial, and the SEC recently successfully moved for the appointment of a receiver over the remaining assets in Broad Reach and related funds.[11]  Following news of Smith's incarceration, IDARF learned through independent research that Spotts and Smith have been working together since at least 2012.[12]

---

[8] Smith refers to Brenda Smith personally, as well as any entities owned and/or controlled by Brenda Smith.

[9] *See United States of America v. Smith*, 2:19-mj-03377-JBC (D.N.J.).

[10] *See Securities and Exchange Commission v. Smith*, 2:19-cv-17213-MCA-ESK (D.N.J.).

[11] *See* Order Appointing Receiver, *Securities and Exchange Commission v. Smith*, 2:19-cv-17213-MCA-ESK (D.N.J. June 29, 2020) (Dkt No. 22).

[12] *See* December 28, 2012 SEC Form N-1A for Starboard Investment Trust, accessible                                                                                            at: https://www.sec.gov/Archives/edgar/data/1464413/000146441312000257/n1a1212

Despite numerous requests, Prophecy has provided IDARF with meager information related to Prophecy Funds' relationship with Smith and the impact of Smith's securities fraud scheme on IDARF's investments.  The little information provided has only heightened, rather than dispelled, IDARF's concerns.  To this day, IDARF is unaware of the extent to which Smith's securities fraud scheme may have affected IDARF's investments.

In October 2019, IDARF, through Vantage, began requesting information from Spotts regarding Smith and her scheme's impact on Prophecy and IDARF. On October 23, 2019, Mark Finn e-mailed Spotts asking, ███████████████ ████████████████████████████[13]  Initially, Spotts informed Vantage that investors, including IDARF, ███████████████████████ ██████  For example, in response to Finn's October 23, 2019 e-mail, Spotts replied, ████████████████████████████████[14]  Spotts further represented to Vantage, in response to Finn's question as to when Prophecy Funds ████████, "█████████████████████████ ████████████████████████████████

---

.htm (identifying Smith and Spotts as having positions with "Prophecy Alpha Trading Fund" and sharing an address in Philadelphia, Pennsylvania used by Smith.)

[13] Exhibit D, E-mails between Mark Finn and Jeffrey Spots (Oct. 23, 2019), FIRSTLANDING-00000036-38, at FIRSTLANDING-00000037.

[14] *Id.* at FIRSTLANDING-00000036 (emphasis added).

████████████████████████████████████████████████████████

████████████████████████████████ ██ Finn responded: "█████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████[16] Spotts has never answered Finn's inquiries.

A little more than a week later, Prophecy Funds and Spotts's explanation shifted. On November 1, 2019, Spotts sent a statement to Vantage Chief Investment Officer Jonathan Finn representing that Prophecy Funds "██

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████[17] Spotts also represented: "██████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[15] *Id* (emphasis added).

[16] *Id.*

[17] Exhibit E, E-mail from Jeffrey Spotts to Jonathan Finn (Nov. 1, 2019), FIRSTLANDING-00000048; Exhibit F, Prophecy Funds' Statement regarding Brenda Smith and Broad Reach Capital, LP (Nov. 1, 2019), FIRSTLANDING-00000049 (emphasis added).

8

██████████████████████████████████████████████████████

██████████████████████████████████████████"[18]   Thus, Spotts's initial

explanation that █████████████████████████████████████████

██████████████████████████████████████████████████████

Months later, Prophecy apparently ████████████████████████████

██████████████████████████████████████████.  During a call

on April 13, 2020, Spotts revealed that, ███████████████████████

███████████████████████████████████[19]

      Surprised by Spotts's shifting explanations, Jonathan Finn of Vantage

requested further information: "█████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████"[20]

      Vantage provided IDARF with what little information Spotts's revealed

regarding Smith.  The lack of transparency was obviously disturbing and prompted

IDARF to conduct its own investigation into Prophecy Funds' relationship with

---

[18] *Id* (emphasis added).

[19] *See* Exhibit G, Vantage Notes of Call with Spotts (Apr. 30, 2020), FIRSTLANDING-00002177-79.

[20] Exhibit H, E-mail from Jonathan Finn to Jeffrey Spotts (Nov. 1, 2019), FIRSTLANDING-00000052 (emphasis added).

Smith and Broad Reach. Spotts later told IDARF that ██████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████[21] IDARF also learned that

Smith created and directed an open-ended mutual fund, Prophecy Alpha Trading

Fund, LP, where Spotts (personally) acted as the portfolio manager.[22]

████████████████████████████████████████████████████

████████████ According to Spotts, t██████████████████████████████

████████████████████████████████████████████████████████████

██████[23]  ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████[24]

To make matters worse, in May 2020, ████████████████████████████

████████████████████████████████████████████████████████████

---

[21] Exhibit I, E-mail correspondence between IDARF and First Landing (Nov. 6, 2019), FIRSTLANDING-00000105-107, at FIRSTLANDING-00000105.

[22] *Id.*; December 28, 2012 SEC Form N-1A for Starboard Investment Trust, accessible                                                                      at: https://www.sec.gov/Archives/edgar/data/1464413/000146441312000257/n1a1212 .htm.

[23] Exhibit G, Notes from Call with Jeffrey Spotts (Apr. 13, 2020), FIRSTLANDING-00002177-79, at FIRSTLANDING-00002177.

[24] Exhibit J, E-mail from ████████████████ (Nov. 22, 2019), FIRSTLANDING-00000166; Exhibit K, E-mail from ████████████████████ (Dec. 16, 2019), FIRSTLANDING-00000553-560, at FIRSTLANDING-00000558.

████████████████████████████████████████[25] On May 4, 2020,

Jeffrey Spotts informed Vantage that ████████████████████████████

████████████████████████████████████████████████████

████[26] ████████████████████████████████████████████

████████

Although a year has passed since Smith's arrest, Spotts and Prophecy Funds

have provided IDARF with minimal information pertaining to the potential impact

of Smith's securities fraud scheme on IDARF's investors.   Indeed, significant

outstanding questions remain as to whether ████████████████████████

████████████████████;[27] whether ████████████████████████

████; whether ████████████████████████████████████████

████; the terms of ████████████████████████████; and, most

importantly, whether—and to what extent—IDARF's investors have been

impacted by Smith's securities fraud scheme.

---

[25] ████ refers to ████████████ personally, as well as any entities owned and/or
controlled by ████████████.

[26] Exhibit L, E-mail from Jeffrey Spotts to Mark Finn and Johnathan Finn (May 4,
2020), FIRSTLANDING-00001564; *see also* Exhibit M, ████████████████████
████████████████████████████████ (January 2020),
FIRSTLANDING-00000480-81.

[27] As discussed *infra*, PTA's limited partnership agreement appears to require that
████████████████████████████████████████████████████
████████████████████████████████. If ████████████████████████
████████████████████ this required procedure was presumably not followed,
constituting a possible breach of fiduciary duty.

**III.   There is Credible Evidence to Infer that** ████████████████
████████████████████████████████████████████████████████████████
██████████████████████

**A.**   ████████████████████████████████████████

In an effort to quell investors' concerns, Prophecy informed its limited

partners in late 2019 that it ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████[28] ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████[29] Instead of allaying investors' fears, ████████

██████████████████ had the opposite effect.

**B.**   ████████████████████████████████████████████████████
████████████████████████

While the exact timing of ████████████████████████████████████ –

Prophecy has declined to say when it took place – ████████████████████

████████████████████████████████████████████████████████████████

---

[28] Exhibit N, Letter from Jeffrey Spotts to Investors (Mar. 31, 2020), IDARF-00000288-89, at IDARF-00000288.

[29] *Id.*

████████████████████████████[30]   In apparent consequence, on

March 11, 2020, ████████████████████████████████████

████████████████████████████████████[31]   ██████████

████████████████████████████████████████████████████

█████[32]

      Five days later, on March 18, 2020, ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

              ██████████████████████████████████
              ██████████████████████████████████
              ██████████████████████████████████
              ██████████████████████████████████
              ██████████████████████████████████
              ██████████████

              ██████████████████████████████████
              ██████████████████████████████████
              ██████████████████████████████████

---

[30] *See id.*; Exhibit O, E-mail correspondence between IDARF and Jeffrey Spotts (Apr. 23, 2020), IDARF-00000490-92, at IDARF-00000490.

[31] Exhibit P, Letter from Deloitte to Jeffrey Spotts (Mar. 11, 2020), FIRSTLANDING-00000643.

[32] *Id.*



IDARF and Vantage representatives will testify that Prophecy has repeatedly promised to give them information about ████████████████████████████████ ████████████████████████ Yet, to date, Prophecy has provided no such information. For instance, in March 2020, Spotts offered to schedule a conference call for Vantage with ████████████████████████████████ ████████████████████████[36] The next day, Vantage accepted Spotts's offer and requested ████████████ contact information. [37]

---

[33] Exhibit Q, Letter from Deloitte to Jeffrey Spotts (Mar. 18, 2020) (emphasis added), FIRSTLANDING-00000632-33, at FIRSTLANDING-00000632.

[34] *Id.*

[35] Exhibit N, Letter from Jeffrey Spotts to Investors (Mar. 31, 2020), IDARF-00000288-89, at IDARF-00000288.

[36] Exhibit R, E-mail from Jeffrey Spotts to Mark Finn and Jonathan Finn (Mar. 23, 2020), FIRSTLANDING-00000631.

[37] Exhibit S, E-mail from Mark Finn to Jeffrey Spotts (Mar. 24, 2020), FIRSTLANDING-00000662-63, at FIRSTLANDING-00000662.

Similarly, in late April 2020, IDARF requested ███████████████████████

███████████████████████████████████████████████[38] In

breach of its promises, Prophecy has failed to follow through. Serious questions

raised by ████████████████████████████████ thus remain

unanswered.

**C.    The Implications of** ████████████████

████████████████████████████████████████

████████████████████████ is a strong indication of potential

mismanagement or misconduct.[39] An examination of Prophecy's Audited 2018

Financial Statements shows that in the relevant note discussing █████████

███████████████████████████████████████████

████████████████████████[40] The Court will hear

testimony that Spotts has admitted that ████████████████████

███████████████████████████████████████████

███████████████████████████████████████████



---

[38] Exhibit O, E-mail from Kevin Alerding to Jeffrey Spotts (Apr. 23, 2020), IDARF-00000490-92, at IDARF-00000490.

[39] ███████████████████████████████████████

██████████ *See* Exhibit Q, Letter from Deloitte to Jeffrey Spotts (Mar. 18, 2020), FIRSTLANDING-00000632-33, at FIRSTLANDING-00000632 (noting that, ████

███████████████████████████████████████████

███████████████████████████████████).

[40] Exhibit T, Trading Advisors' Financial Statements as of Dec. 31, 2018, IDARF-00001375-437, at IDARF-00001399.

 The Court will also hear

testimony that Spotts has admitted that he believes ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████[41]

Public Company Accounting Oversight Board ("PCAOB") Auditing

Standards ("AS") AS 2410 concerns "Related Parties," and "establishes

requirements regarding the auditor's evaluation of a company's identification of,

accounting for, and disclosure of relationships and transactions between the

company and its related parties."[42] Pursuant to AS 2410.10, an "auditor should

identify and assess the risks of material misstatement at the financial statement

level and the assertion level," which "includes identifying and assessing the risks

of material misstatement associated with related parties and relationships and

transactions with related parties, including whether the company has properly

identified, accounted for, and disclosed its related parties and relationships and

---

[41] Exhibit U, E-mail from Jeffrey Spotts to Mark Finn (Mar. 23, 2020), FIRSTLANDING-00000635.

[42]             AS             2410.01,             accessible             at
https://pcaobus.org/Standards/Auditing/Pages/AS2410.aspx

transactions with related parties." [43] If an auditor determines that a related party or relationship or transaction with a related party previously undisclosed to the auditor exists, the auditor should, *inter alia*, evaluate both why the related party transaction was not disclosed and "the implications for the audit if management's nondisclosure to the auditor of a related party or relationship or transaction with a related party indicates that fraud or an illegal act may have occurred." [44]

████████████████████████████████████████████

████████████████████████████████████ provide the Court with highly credible evidence to infer that Prophecy failed to disclose material information concerning ██████████████████████████████

████████████████████████████████████

   **D.**   ████████████████████████████████
          ████████████████████████████████
          ████████████████████

After the ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[43] AS 2410.10.
[44] AS 2410.16(f)(iii).

████████████████████████████████████████[45]   Although

Spotts  promised  limited  partners  that  once  ██████████████████████████

████████████████████████████████████████[46] █████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████

Defendants have failed to provide Plaintiff with audited financial statements

for PTA and PSO.  The limited partnership agreements for the Prophecy Funds

require  Defendants  to  provide  limited  partners  with  such  audited  financial

statements.[47]

---

[45] Exhibit U, Email from Jeffrey Spotts to Mark Finn (Mar. 23, 2020), FIRSTLANDING-00000635; *see also* Exhibit N, Letter from Jeffrey Spotts to Investors (Mar. 31, 2020), IDARF-00000288-89, at IDARF-00000288.

[46] Exhibit N, Letter from Jeffrey Spotts to Investors (Mar. 31, 2020), IDARF-00000288-89, at IDARF-00000288.

[47] Exhibit V, Limited Partnership Agreement of Prophecy Trading Advisors, LP (Aug. 24, 2011), IDARF-00003532-3560, at IDARF-00003538 ("The General Partner shall cause to be prepared and distributed to each Partner *as soon as practicable* following each Fiscal Year [ending on December 31 per Section 1.05] the Partnership's annual financial statements prepared in accordance with U.S. generally accepted accounting principles ('GAAP') . . . and audited by an independent certified public accounting firm . . . ." (emphasis added)); Exhibit W, Amended & Restated Limited Partnership Agreement of PSO, (Feb. 1, 2019), IDARF-00003352-3382, at IDARF-00003358 (same, with respect to obligation of defendant Prophecy Special Ops GP, LLC).

18

**IV.    There is Credible Evidence to Infer Wrongdoing, Mismanagement or Breach of Duty by Prophecy in Connection with** ████████ ████████████████████

By March 2020, IDARF learned that Defendants had ████████████

████████████████████████████████████████████████████████

████████████████████████████████████ ████████ or entities under his control,

serve as a sub-advisor of assets in PTA[48] and PSO.[49]

████████ is more than just a sub-advisor on the Prophecy Funds' platform, and

his multiple and interlocking roles and financial interests seem not to have been

adequately analyzed or understood by Prophecy, with disastrous results.    In

addition to ████████████████████████████████████████

████████████████████████████████████████. ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████.[50]

████████████████████████████████████████████

████████████████████████████████████████████████

---

[48] Defendants' Response to Request for Admission No. 11.
[49] Defendants' Response to Request for Admission No. 10.
[50] ████████████████████████████████████████████

████████████

19



IDARF recently learned that Defendants permitted ███████████

███████████████████████████████████████████

███████████████████████████████████[53] It is

unclear how such a decision could possibly comport with the Limited Partnership

Agreement (the "LPA") of PTA.[54] PTA LPA Section 1.03(b) provides that a sub-

advisor that has been delegated discretionary investment authority over an Account

"is expected to contribute to each Account that it manages its own 'at-risk capital'

in an amount equal to a negotiated percentage of the total net assets initially

invested in such Account," with PTA investing the remainder of the capital in the

---

[53] Under the first loss strategy, any losses to investments of assets under a given Manager's investment discretion would first be debited against that Manager's at-risk capital, thereby limiting investors' downside risks.   In exchange for shouldering this first-loss risk, the Manager received a higher-than-typical share of profits on investments.  *See* Exhibit A, April 1, 2014 Private Placement Memorandum    of    PTA,    IDARF-00003467-3523,    at    IDARF-00003476-IDARF00003477.

[54] Exhibit V, Limited Partnership Agreement of PTA (Aug. 24, 2011), IDARF-00003532-3560.

██████[55] While defendant Prophecy Trading Advisors GP, LLC has the sole power and discretion to select Trading Advisors Fund's investments, such investments must be "in accordance with the purposes set forth in Section 1.03."[56]

██████ also managed funds for PSO ██████████ ████████████ ██████████████████ Prophecy led fund investors, including IDARF, to believe, that the decisions concerning the terms of █████████ as a sub-advisor of the Prophecy Funds were a result of the "diligent sub-advisor selection process conducted by Prophecy's Investment Committee," and were being "monitored and enforced by a dedicated in-house risk desk that has intra-day operational command over the notional allocations of each sub-advisor."[57]

████████████████████████

████████████████████████

████████████████████████

██████████████ In December 2019, PTA █████████████

---

[55] *Id.* at IDARF-00003533; *see also* Exhibit A, Prophecy Trading Advisors, LP: Confidential Private Placement Memorandum (Apr. 1, 2014), IDARF-00003467-3523, at IDARF-00003476-77 (████████████████████████████████████████████████████████████████████████████████████████████████████████).

[56] Exhibit V, Limited Partnership Agreement of PTA (Aug. 24, 2011), IDARF-00003532-3560, at IDARF-00003535.

[57] Exhibit B, Dec. 2019 PTA Fact Sheet, IDARF-00003526-3531, at IDARF-00003530.

███████████████████████████████ [58] The concentration of assets with ████ ████████████ therefore likely violated Defendants' own policies concerning risk and concentration limits, and possibly other aspects of the Prophecy Funds' Compliance policies and procedures, all of which were designed to diversify and manage risk across a platform of multiple sub-advisors.

The apparent failure of Prophecy to follow its own risk and concentration controls culminated in March 2020, when market volatility exacerbated ████ losses. On March 24, 2020, Spotts informed Vantage that "█████████████████ ██████████████████" [59] On March 26, 2020, Spotts █████████████████ █████████████ [60] Spotts ultimately reported to IDARF in late March 2020 that ████████████████████████████████████████████████████████ ████████████████████████████ This ██████ underscored the importance of the ███████████████████████████████████████████████ in connection with his role as a sub-advisor of assets of PTA.

On or about April 14, 2020, Prophecy provided a "████████████" relating to PTA that included a description of numerous guarantees and collateral

---

[58] *Id.*

[59] Exhibit X, E-mail from Jeffrey Spotts to Mark Finn (Mar. 24, 2020), FIRSTLANDING-00000659.

[60] Exhibit Y, E-mail from Jeffrey Spotts to Mark Finn (Mar. 26, 2020), FIRSTLANDING-00000697.

arrangements with ████[61]  The ████████ included a startling disclaimer: "█

████████████████████████████████████████████████████

████████████████████████████████████████████"[62]

Prophecy would not represent to its own investors that its arrangements with ████

to provide ████████████ – ████████████████ –

████ – were enforceable.

**V.   There is Credible Evidence to Infer Wrongdoing, Mismanagement or Breach of Duty by Prophecy in ████████████████████████ ████████████████████ ████**

████ served as a sub-advisor in both the PTA and PSO.  In each fund, the

assets invested with ████ were ████████ and subject to no direct oversight or

control by Prophecy.[63]  ████ has allegedly failed to honor his obligations and left

the Prophecy Funds at risk of losing the only value remaining in the Prophecy

Funds.

### 1.   ████ and PTA

Pursuant  to  ████  investment  advisory  agreements,  ████  purportedly

████████████████████████████████████████████████

---

[61] Exhibit Z, PTA's List of Potential Assets (Apr. 14, 2020), IDARF-00000397-8.
[62] *Id.* at IDARF-00000397.
[63] The decision to permit ████████ investments is subject to the supposed rigorous risk management policies employed by Prophecy, the sufficiency of and adherence to which are seriously in question and a subject of investigation by IDARF in connection with its demands.

████████████████████████████████████████████████████████

████████████████████████████     In connection with those guarantees, IDARF

understands that █████ executed various collateral and security agreements

purporting to given PTA adequate security for the assets it invested with ██████  In

or about March 2020, however, IDARF was informed that ███████████████████

████████████████████████████████████████████████████████

███████████████████████████

For instance, Spotts communicated with investors via teleconferences during

March, April and early May 2020 concerning ██████ but he regularly contradicted

himself or provided inconsistent information.  In March 2020, when Spotts first

raised the issue of ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

On or about March 31, 2020, Prophecy Trading Advisors ██████████████████

██████████████████████████████████████████████████  The only

reasonable conclusion from those actions was that there were problems with

exercising on ████████████████████████████████████.  Regarding the

████████████████████████████, IDARF understands that ███████████████████

24

███████████████████████████████████████████████████

███████████████████████

By late May 2020, however, Spotts's story with respect to ███ had changed. ██████████████████████████████████████ ████████ Instead of reassuring investors that there was adequate collateral, Spotts began speaking about ███████████████████████████ Spotts reported to IDARF that he ████████████████████████████████

███████████████████████████████████████████████████[64]

This is despite the fact that, by market close on June 4 2020, the price of ███ ████████████████████████ – the level that ██████ had previously said would ensure the Prophecy Funds' investors full recovery.  The stark difference in Spotts's messages, notwithstanding the ████████████ was extraordinarily distressing to investors, including IDARF.

Spotts has been equally contradictory and inconclusive, indicating, for instance, concerning his efforts to obtain the collateral.  For instance, Spotts indicated that █████████████████████████████████

[64] *See* Exhibit AA, E-mail from Jay Brammer to Jeffrey Spotts (May 30, 2020), IDARF-00000994.

25

███████████████████████████[65]  That did not occur, nor did the Prophecy

Funds █████████████████████████.

## 2. ██████ and PSO

In May 2020, PSO ██████████████████████████████

██████  By late May 2020, IDARF had learned that ██████████████████

██████████████████████████████████████████  On

May 30, 2020, IDARF emailed Spotts, ███████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████[66]  Spotts responded only by suggesting a call in which he

would █████████████████[67] but, even then, he spoke only in generalities.

To date, IDARF remains largely in the dark as to how much of PSO's assets

are ██████████████████.    Additionally, it remains unclear why PSO

██████████████████████████████████████████

██████[68]

---

[65] *See* Exhibit BB, E-mail correspondence between Jay Brammer and Trevor Gray, IDARF-00000043-45, at IDARF-00000044.

[66] *See* Exhibit AA, E-mail from Jay Brammer to Jeffrey Spotts (May 30, 2020), IDARF-00000994.

[67] Exhibit CC, Email from Spotts to J. Brammer (May 31, 2020), IDARF-00000074.

[68] This would be surprising, however, because, based on the presentations made by Spotts at the inception of PSO just over a year ago, █████████████████████

### 3. Prophecy's Inconsistent and Unsuccessful ███████████████████

On or about May 27, 2020, IDARF learned that Defendants ████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████[69]  To date, however, including after the service of IDARF's demand

for inspection, Prophecy has utterly failed to enforce its ████████████████

████████████████.

Aside from providing basic information concerning ████████████████

████████████████████  Defendants' investor updates concerning ███

████████  have been minimal and high-level.  Spotts informed IDARF that an

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████

Other recent events, too, call into doubt the Prophecy Funds' ████████

██████████████████████████████████████.  For instance, in or

about early July 2020 – after service of the Initial Demands on the Prophecy Funds

– IDARF learned that ████████████████████████████████████████

---

████████████████████████  *See* Exhibit DD, Prophecy Presentation on PSO,
IDARF-00002185-2204, at IDARF-00002193-2199 (████████████████████████
████████████████████████████████).
[69] *See* Defendants' Response to Request to Admit Nos. 12 and 13.

█████████████████████████████████████████████

███████████████████████████████████ Given the centrality of these security interests to the PTA's "first-loss model," Prophecy's apparent failure to have proper and enforceable claims to ████████████████████ strongly infers serious mismanagement, wrongdoing or breach of duty by Prophecy.

## VI.    Plaintiff's Section 17-305 Demands

On June 11, 2020, IDARF served demands on the general partners of the Prophecy Funds seeking to inspect the books and records of PTA and PSO (the "Initial Demands").[70]

The Initial Demands sought 41 categories of documents:

1.    Organizational documents of PTA and PSO, including those relating to the reorganization of Prophecy in 2018;

2.    Meeting minutes and resolutions of the General Partner and Manager relating to the management of PTA and PSO;

3.    All financial statements (audited or unaudited) for the Prophecy Funds;

4.    All monthly statements for each sub-advisory account in Trading Advisors Fund and Special Opportunities Fund;

5.    The general ledgers of PTA and PSO, and supporting documents for any disbursements;

6.    Federal tax filings for PTA and PSO for 2017 and 2018;

7.    All due diligence conducted by the General Partner and Manager concerning Smith

---

[70] *See* Exhibit H to the Amended Complaint.

8.   All investment management agreements or sub-advisor agreements between the General Partner and/or Manager, on the one hand, and Smith, on the other;

9.   All communications concerning or relating to Smith since September 2018;

10.  All documents relating to the termination of Smith's relationship with the Funds;

11.  All documents relating to the sale of Smith's debt;

12.  A profit and loss statement for each account owned, operated or managed by Smith in connection with PTA or PSO;

13.  All documents relating to any analysis or investigation conducted by the General Partner or Manger concerning Smith;



19.  The Manager's Compliance Manual, including any exhibits or other documents referenced in the Compliance Manual, for the period 2017 to present, including any different versions or iterations of the Compliance Manual during that time period;

20. Documents sufficient to establish the General Partner and Manager's policy or policies concerning risk or concentration limits in PTA or PSO, including any changes to such policy or policies;

21. Communications by General Partner or Manager or Audit Committee with ███████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████;

22. All SEC filings regarding the ███████████████;

23. All public announcements or communications with Limited Partners concerning ████████████████;

24. ██████████████████████████████████████ ████████████████████████████████████████ ██████████████████████;

25. ████████████████████████████████████████ ████;

26. █████████████████████████████████████████;

27. Minutes of Audit Committee Meetings for 2017 to present;

28. All investment management agreements or sub-advisor agreements between the General Partner or Manager and ██████

29. All due diligence conducted by the General Partner or Manager concerning ██████

30. All agreements or other documentation regarding any assets, including publicly-traded securities, purchased by ██████ relating in any way to the Prophecy Funds;

31. All communications between the General Partner or Manager and ██████ relating to the investment management agreements referenced in the immediately preceding paragraph;

32. All documents comprising any guarantee by ██████ in connection with accounts in PTA or PSO;

30

33.    All communications with ███ or his agents or representatives in connection with any guarantee;

34.    Documents sufficient to identify any collateral pledged by ███ in connection with any accounts in PTA or PSO;

35.    All communications with ███ or his agents or representatives in connection with any such collateral pledged by ███;

36.    Documents sufficient to identify any cross-trades between or amongst accounts in PTA or PSO;

37.    ████████████████████████████████████ ████████████████████████████████████ ██████████;

38.    ████████████████████████████████████ ████████████;

39.    ████████████████████████████████████ ██████████████████████████████;

40.    ████████████████████████████████████ ████████████████████████████████████ ██████████████████; and

41.    All subpoenas, requests for information, and responses thereto between PTA, PSO, the General Partner or the Manager and any State or federal agency.

One June 26, 2020, IDARF commenced this action, seeking the inspection of Defendants' books and records on an expedited schedule.  In opposition to the Motion to Expedite, Defendants argued that the Initial Demands failed to include sufficient factual detail outlining Plaintiff's credible basis to suspect potential wrongdoing, mismanagement or breach of duty.

31

While IDARF disagreed with Defendants' arguments, in order to avoid unnecessary litigation over the collateral issue of whether the Initial Demands provide enough factual detail concerning its credible basis, on July 10, 2020, IDARF served supplemental demand letters, explaining in detail the credible bases to investigate potential wrongdoing, mismanagement or breach of duty by Defendants (the "Supplemental Demands"; together with the Initial Demands, the "Demand Letters").[71]

The Supplemental Demands were identical to the Initial Demands (*i.e.,* contained the same 41 categories of information requested), except that the Supplemental Demands incorporated language from the Complaint and the Motion to Expedite describing Plaintiff's credible basis to suspect wrongdoing, mismanagement or breach of duty, of which Defendants were already aware.

## VII.  Defendants Rejected Plaintiff's Section 17-305 Demands

On June 18, 2020, Defendants' counsel responded to the Initial Demands via email, permitting IDARF to receive copies of the Limited Partnership Agreements and their amendments *provided IDARF executed a confidentiality agreement* and otherwise contending that the demands "fail[] to satisfy the legal requisites of a proper purpose to warrant further inspection."[72]

---

[71] *See* Ex. K to Amended Complaint.
[72] *See* Ex. I to Amended Complaint.

In response to the Supplemental Demands, Defendants' counsel requested a one-week extension of time to respond on July 16, 2020.  IDARF declined to extend the statutory deadline for Defendants' response to the Supplemental Demands, and Defendants did not respond to the Supplemental Demands within the five business day response deadline under Section 17-305.

## **ARGUMENT**

### I.   **Plaintiff Has Stated a Proper Purpose for Seeking Inspection of Prophecy's' Books and Records**

#### A. **Investigating Potential Wrongdoing, Mismanagement or Breach of Duty is a Proper Purpose for Examination of Partnership Books and Records**

 "It is well established that a stockholder's desire to investigate wrongdoing, mismanagement or breach of duty is a 'proper purpose.'"[73]  Under Delaware law, a limited partner is not "required to provide by the preponderance of the evidence" that the wrongdoing "actually occur[red]."[74]  Rather, a plaintiff need only allege a "'credible basis' from which a court can infer that mismanagement, waste or

---

[73] *Seinfeld v. Verizon Commc'ns, Inc.,* 909 A.2d 117, 121 (Del. 2006) (quoting *Nodana Petroleum Corp. v. State ex rel. Brennan,* 123 A.3d 243, 246 (Del. 1956)); *see also City of Westland Police & Fire Ret. Sys. v. Axcelis Techs., Inc.,* 1 A.3d 281, 287 (Del. 2010) ("Our law recognizes investigating possible wrongdoing, mismanagement or breach of duty as a 'proper purpose.'").
[74] *Thomas & Betts Corp. v. Leviton Mfg. Co.,* 681 A.2d 1026, 1031 (Del. 1996); *Marmon v. Arbinet-Thexchange, Inc.,* 2004 WL 936512, at *4 (Del. Ch. Apr. 28, 2004).

wrongdoing *may* have occurred."[75] The "credible basis" standards "set the *lowest possible burden of proof*"[76] and "may be satisfied by a credible showing, through documents, logic, testimony or otherwise, that there are legitimate issues of wrongdoing."[77]

In determining whether a plaintiff has presented a credible basis for inspection, the court looks at allegations and evidence collectively.[78] In that regard, it is well within the Court's authority to consider lawsuits, investigations, internal documents, logic, circumstantial evidence and hearsay statements evidencing potential wrongdoing, or other credible evidence when analyzing a demand for inspection.[79]

---

[75] *Seinfeld*, 909 A.2d at 118 (emphasis added).

[76] *Id.* at 123 (emphasis added); *Khanna v. Covad Commc'ns Grp., Inc.,* 2004 WL 187274, at *6 n.25 (Del. Ch. Jan. 23, 2004) (a plaintiff can meet its burden with allegations that "may ultimately fall well short of demonstrating that anything wrong occurred").

[77] *Sec. First Corp. v. U.S. Die Casting & Dev. Co.,* 687 A.2d 563, 568 (Del. 1997); *Seinfeld*, 909 A.2d at 123.

[78] *See, e.g., In re Lululemon Athletica Inc. 220 Litig.*, 2015 WL 1957196, at *11-13 (Del. Ch. Apr. 30, 2015) (noting suspicious timing of trades coupled with a news article raising questions about insider trading were previously found sufficient to establish credible basis); *Paul v. China MediaExpress Holdings, Inc.*, 2012 WL 28818, at *4 (Del. Ch. Jan. 5, 2012) (determining that plaintiff had identified a credible basis for Section 220 demand based on evidence which included "numerous third-party media reports," "the noisy resignations of three board members" and a publicly announced "internal investigation").

[79] *See, e.g., Elow v. Express Scripts Hldgs. Co.*, 2017 WL 2352151, at *5 (Del. Ch. May 31, 2017 (finding "pleadings in the Anthem Action, the Securities Action complaints, and public statements by Express Scripts" sufficient to establish a

34

Here, IDARF and the other limited partners have enforceable interests to protect from mismanagement or wrongdoing. The General Partner of the Prophecy Funds owes the limited partners fiduciary duties, which are not reduced in the Partnership Agreement.[80] The General Partner and the Prophecy Funds also owe important contractual duties to the limited partners, concerning critical subjects such as requirements for "at risk" capital of investment managers (Section 1.03(b)), requirement to calculate Net Asset Value each month (Section 9.04(a)), authority to establish reasonable reserves for partnership obligations (Section

---

credible basis); *La. Min. Police Emps.' Ret. Sys. v. Countrywide Fin. Corp.*, 2007 WL 2896540, at *2 (Del. Ch. Oct 2, 2007), *order clarified,* 2007 WL 4373116 (Del. Ch. Dec. 7, 2007) (finding a news article and independent statistical analysis of stock option grant dates sufficient to suspect options backdating); *Carapico v. Phila. Stock Exch., Inc.*, 791 A.2d 787, 792 (Del. Ch. 2000) (finding an "SEC inquiry" and "SEC Order" were "sufficiently concrete" to suspect mismanagement); *China MediaExpress Holdings, Inc.,* 2012 WL 28818, at *4 (finding "the resignation of the Company's independent auditor" and "[the company's] initiation of its own internal investigation" as each providing a credible basis from which the court could infer mismanagement or breach of fiduciary duties in connection with a Section 220 request).

[80] *Dohmen v. Goodman*, 2020 WL 3428213, at *3 (Del. June 23, 2020) ("As a fiduciary, and absent contractual modification, a general partner's duties to limited partners and the partnership parallel those exercised by directors of Delaware corporations."); *Boxer v. Husky Oil Co.*, 429 A.2d 995, 997 (Del. Ch. 1981) ("[I]t is clear that the general partner in a limited partnership owes a fiduciary duty to the limited partners."); *see also In re Boston Celtics Ltd. P'ship Shareholders Litig.*, 1999 WL 641902, at *4 (Del. Ch. Aug. 6, 1999) ("the fiduciary duty of fair dealing by a general partner to a limited partner is no less than that owed by a director to a shareholder. The form of the enterprise does not diminish the duty of fair dealing by those in control of the investments."). The Prophecy Funds' LPAs have a limitation of liability provision , but nothing that reduces or removes fiduciary duties.

3.02(r)) and requirement to make purchases and sales in the "best interests of the Partnership" (Section 3.02(m)).    IDARF's investigation could lead to claims against the General Partners, the Prophecy Funds, representatives of the Prophecy Funds who made potentially fraudulent representations concerning the Prophecy Funds' polices and investments, as well as claims derivatively on behalf of the Partnerships, under 6 Del. C. §17-1001,  against a variety of actors who might have damaged the Funds by illegal action.

**B.    Plaintiff Has Presented a Credible Basis for Inspection of Prophecy's Books and Records**

**1.    The Allegations and Evidence Support Investigating Potential Mismanagement, Misconduct or Breaches of Duty in Connection with Prophecy's Relationship with Smith**

IDARF has provided a credible basis to investigate potential mismanagement, misconduct or breaches of duty in connection with Prophecy's relationship with Smith.

First, ███████████████████████████████████████ ████████████████████████████████████████ ██████████    ██████████████████████████. Spotts's ████████ other professional ties to Smith raise credible questions about (1) whether the terms on which ██████████████████████████████████ ████████████████, and (2) the adequacy of any diligence Prophecy conducted in

36

connection with Spotts's decision to ██████████████████████████

████████████████████████, particularly where Prophecy represents that it

conducts "deep due diligence and background checks" on sub-advisors in PTA.[81]

Second, Smith has been arrested and charged with securities fraud, both

criminally and civilly.[82]  In addition, IDARF understands that █████████████



                                                                    here only

---

[81] Exhibit A, April 1, 2014 Private Placement Memorandum of PTA, IDARF-00003467-3523, at IDARF-00003493 (describing "Manager Sourcing" procedures, including "conduct *deep due diligence and background checks on selected talent to avoid mediocre talent in hot strategies*") (emphasis added).

[82] *See supra*, note 9.

[83] Exhibit J, E-mail from ████████████e (Nov. 22, 2019), FIRSTLANDING-00000166; Exhibit K, E-mail from ██████████████████ (Dec. 16, 2019), FIRSTLANDING-00000553-560, at FIRSTLANDING-00000558.

[84] *See Cohen v. El Paso Corp.*, Civ. A. 551-N, 2004 WL 2340046, at *2 (Del. Ch. Oct. 18, 2004) (holding that ████████████ and accounting write-down were sufficient credible basis for investigation); *Freund v. Lucent*, Civ. A. 18893, 2003 WL 139766, at *3 (Del. Ch. Jan. 9, 2003) (finding that an ████████████ is a "credible basis" for misconduct or mismanagement); *Carapico v. Philadelphia Stock Exch., Inc.*, 791 A.2d 787, 792 (Del. Ch. 2000) (finding that the "purpose of investigating the misconduct identified in the ████████" was sufficiently concrete to establish a credible basis to suspect misconduct or mismanagement).

bolsters IDARF's credible basis to suspect misconduct or mismanagement by Prophecy relating to Smith.[85]

Third, Spotts's shifting and piecemeal explanations regarding Smith, and Prophecy's ████████████████████████████, further bolster IDARF's credible basis to suspect mismanagement, misconduct and breaches of duty. Spotts initially informed IDARF that the Prophecy Funds had ████████████████ ██████████████████████ thus, IDARF's investments were not impaired.[86] Spotts's position later shifted in November 2019, when he revealed that the Prophecy Funds had ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████

Fourth, Smith's apparent securities fraud scheme and the appointment of a receiver raise substantial questions regarding PTA's potential claw-back liability to victims of Smith's fraud. IDARF has repeatedly raised these questions with Spotts, who has not addressed them. ████████████████ of the ███████████

---

[85] Exhibit G, Notes from Call with Jeffrey Spotts (Apr. 13, 2020), FIRSTLANDING-00002177-79, at FIRSTLANDING-00002177.
[86] Exhibit D, E-mails between Mark Finn and Jeffrey Spots (Oct. 23, 2019), FIRSTLANDING-00000036-38, at FIRSTLANDING-00000037.

████████ were intended to settle the matter but, instead, ████████████

████████████████████████████████████████████████████ Taken

together, these facts are more than sufficient to establish a credible basis

supporting IDARF's investigation of potential mismanagement, wrongdoing or

breach of duty by Prophecy in connection with its relationship with Smith, as well

as supporting an investigation into the impact of Smith's securities fraud scheme

on IDARF's investments.

**2. The Allegations and Evidence Support Investigating Potential Mismanagement, Misconduct or Breaches of Duty in Connection with Prophecy's ████████████████**
████████████

Plaintiff has provided a credible basis to investigate potential wrongdoing,

mismanagement or breach of duty in connection with the ████████████████

████████████████████████████

First, the evidence strongly indicates that ████████████ uncovered

information about Prophecy's transactions with Smith or the ████████████

████████████ that Prophecy had not previously ████████████████. The Court can

infer from ████████████████████████ ████████████ ████████████████████

for the first time either (1) Spotts's significant ████████ and business relationship

with Smith, apart from Prophecy's ████████████████t; and/or (2) that the

████████████████████ was assigned to a ████████-controlled entity, ████████. Both of

these facts are highly relevant to the "Related-Party Transactions" notes to Prophecy's Audited 2018 Financial Statements.[87]



– particularly since Spotts has provided no other explanation.

"[90]

---

[87] ████████████████████████████████████████████████████████████████████████

[88] Exhibit Q, Letter from Deloitte to Jeffrey Spotts (Mar. 18, 2020), FIRSTLANDING-00000632-33, at FIRSTLANDING-00000632.

[89] Exhibit N, Letter from Jeffrey Spotts to Investors (Mar. 31, 2020), IDARF-00000288-89, at IDARF-00000288.

[90] Exhibit U, E-mail from Jeffrey Spotts to Mark Finn (Mar. 23, 2020), FIRSTLANDING-00000635.

████████████████████████████████████████████████

███████████████████████ a credible basis from which the Court can infer that

mismanagement, wrongdoing or breach of duty may have occurred.[91]  In particular,

Prophecy's failure to disclose a related-party transaction with Smith and/or ████

raises serious questions about potential wrongdoing, mismanagement or breach of

duty, including among other things, whether the transactions with Smith and ████

were at arm's-length, how much value Prophecy truly received, and whether the

terms and conditions of the transactions were fair to Prophecy and its investors.

████████████████████████████████████████████████

████████████████████████████████████████████████,[92] no audit

report has been received from ██████████████████████ – let alone

the 2019 financial statements.

For these reasons, the Court should conclude that there is credible basis to

investigate potential wrongdoing, mismanagement or breach of duty in connection

with ███████████████████████

---

[91] As noted above, AS 2410 specifically notes that management's failure to disclose a related party transaction potentially raises the implication "that fraud or an illegal act may have occurred," the potential implications of which auditors are directed to assess. *See* AS 2410.16(f)(iii); *see also China MediaExpress Holdings, Inc.,* 2012 WL 28818, at *4.

[92] Exhibit U, Email from Jeffrey Spotts to Mark Finn (Mar. 23, 2020), FIRSTLANDING-00000635; Exhibit N, Letter from Jeffrey Spotts to Investors (Mar. 31, 2020), IDARF-00000288.

### 3. The Allegations and Evidence Support Investigating Potential Mismanagement, Misconduct or Breaches of Duty and Breach of Duty in Connection with Prophecy's Relationship with █████████

Plaintiff has provided a credible basis to investigate potential mismanagement, wrongdoing and potential breaches of duty in connection with Prophecy's relationship with ████.

First, credible evidence indicates that the Defendants violated their internal risk and concentration policies, as well as their contractual and fiduciary duties to limited partners, and potentially made fraudulent representations, by implementing undisclosed ████████████████████████████████████████

████ The evidence will show that, in the short span of three months – between December 2019 and March 2020 – PTA consolidated its assets from ████████ █████████████████████ ████. The evidence also shows that, by late March 2020, ████████████████████████████████████

████████████████████████████████████████

████████ Funds and the real-time management over sub-advisor's activities. Indeed, for IDARF, Prophecy's supposed risk-management process, including diversification across managers and strategies, was highly material to its decision to invest in the Prophecy Funds.

Second, the timing and terms of the ███████████████████ raises credible, and serious, questions of potential wrongdoing, mismanagement or breach of Prophecy's duties to investors. Prophecy assigned its ███████████ ████████████ on or about April 1, 2019, mere months before Spotts's ████ ███████████ Smith was arrested for securities fraud. ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████ Even more oddly, in January 2020 – more than three months *after* Smith had been arrested for running a Ponzi scheme – ████████████████████ ██████████████████████████████████████. Presumably, by January 2020, it was clear that the ████████████████████████████ ████████████████████████████ ████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ All told, the evidence supports a credible inference that ████████████████████████████████████ – and

soon thereafter, by March 2020, ███████████████████████████████

███████████████████████████████████████

    Third, with respect to PSO, ████████████████████████████████

███████████████ over where PSO lacked control of the investment account.

Despite attempts by Prophecy to secure return of the invested assets, Prophecy has

been unable to do so, calling into question its risk management and oversight

duties with respect ██████████████████████. IDARF has repeatedly

questioned Spotts ████████████████████████████████

███████████ yet it has received no coherent response from Prophecy.[93]

    Accordingly, there is a credible basis for the Court to infer that there was

potential mismanagement, wrongdoing, or breaches of duty by Prophecy in

connection with its relationship ████████.

        **4.**  **The Allegations and Evidence Support Investigating Potential Mismanagement, Misconduct or Breaches of Duty by Prophecy in Connection with Securing the ███████ ████████████ Which Represents the Only Value Remaining in the Prophecy Funds**

    IDARF has also presented a credible basis to inspect Defendants' books and

records concerning potential mismanagement and breaches of duty by Defendants

---

[93] *See, e.g.*, Exhibit AA, E-mail from Jay Brammer to Jeffrey Spotts (May 30, 2020), IDARF-00000994.

in connection with ████████████████████████████████ which now

represent the only remaining value in the Prophecy Funds.

Defendants appear to have failed to require ██████████████████████

– which likely violated the LPA and is fundamentally at odds with the concept of

first-loss.[94]  Instead, Defendants allowed ████████████████ that appears not

to have been invested alongside PTA's assets. The evidence also indicates that

Defendants failed to ensure that this ████████████████████████████

████████████████████████████████████████

On or about May 27, 2020, the Prophecy Funds ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ Defendants' failure to monitor its third-party

advisor's compliance ████████████████████ prior to March 2020 is likely

at least a breach of Defendants' contractual and fiduciary duties to its limited

partners.

---

[94] Exhibit V, Limited Partnership Agreement of PTA (Aug. 24, 2011), IDARF-
00003532-3560.

IDARF understands that, notwithstanding ████████████████

███████████████████████████████████████████████████████

██████████████████ the Prophecy Funds. Spotts informed IDARF in late July

2020 that an ██████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████

For these reasons, the Court should conclude that a credible basis exists to

believe that there was potential wrongdoing, mismanagement or breaches of duty

by Defendants in connection with ████████████████████████████

████████████████████████████████████████

## II.    Section 17-305 Supports Production of the Books and Records Sought

### A.    A Limited Partner May Inspect All Documents Reasonably Related to Its Interests as a Limited Partner

Upon showing a proper purpose, a books and records plaintiff may obtain

the categories of documents listed in Section 17-305(a). *See* 6 Del. C. § 17-305(a).

To do so, the limited partner must establish that the information it seeks "is

reasonably related to the limited partner's interest as a limited partner." 6 Del. C. §

17-305(e). Relying upon Section 220 precedent, the Court of Chancery has held

that inspection rights under Section 17-305 are "limited to those documents that are necessary, essential and sufficient" for the limited partner's stated purpose.[95]

IDARF's demands for inspection easily satisfy this "necessary and essential" standard.[96] Accordingly, this Court should enter an Order compelling the inspection of all categories of documents sought by the Demand Letters.

**B.    The Categories of Documents Plaintiff Seeks Reflect Each of the Matters at Issue, and Are Reasonably Related to Its Interests as a Limited Partners in the Prophecy Funds**

**1.    General    Organizational    Documents, Investigations (Request Nos. 1-6, 41)**

IDARF has requested general organizational documents relating to Prophecy Funds, including those relating to the reorganization of Prophecy in 2018 (Request No. 1); meeting minutes and resolutions (Request No. 2); financial statements (Request No. 3); monthly statements for each of Prophecy Funds' sub-advisory

---

[95] *See, e.g.*, In re Plains All Am. Pipeline, L.P., 2017 WL 6016570, at *4 (Del. Ch. Aug. 8, 2017); *Holman v. Nw. Broad, L.P.*, 2007 WL 1074770, at *6 (Del. Ch. Mar. 29, 2007).

[96] The Delaware Supreme Court has never held that the "necessary and essential" standard applies in the context of Section 17-305. In *Murfey v. WHC Ventures, LLC*, the Delaware Supreme Court noted "the question of whether Section 220's conditions should be imported into Section 17-305(a)(1)-(5) is one of the very questions before us and an issue of first impression," although the Court ultimately declined to address the question because the appeal was resolved on other grounds. 2020 WL 3957837, at *15 (Del. Jul 13, 2020). Without conceding that the "necessary and essential" condition applies, Plaintiff's demands here can meet either standard. Plaintiff expressly reserves it right to argue that the ostensibly lower "reasonably related" condition is the appropriate one.

accounts (Request No. 4); general ledgers of PTA and PSO (Request No. 5); and federal tax filings (Request No. 6).  IDARF also requests copies of any subpoenas received by Prophecy, and its responses thereto (Request No. 41).

These general organizational and financial documents are necessary for IDARF to understand Prophecy's corporate structure and financial condition. Indeed, the documents sought through Request Nos. 1-6 are routinely provided for inspection in Delaware books and records actions.

Given the importance of meeting minutes and materials to an investigation, meeting minutes and materials are necessary for any investigation by IDARF.[97] Likewise, organizational documents and charts sought by IDARF will provide crucial information underpinning Prophecy's structure.[98]

Similarly, documents and information pertaining to Prophecy's finances, including financial statements, general ledgers, and federal tax filings, are necessary to IDARF's investigation of Prophecy's mismanagement and misconduct in connection with Smith ███████ including as to their impact on

---

[97] *See Amalgamated Bank v. UICI*, 2005 WL 1377432, at *4 (Del. Ch. June 2, 2005) (finding that plaintiff was "entitled to broad access to the minutes"); *Grimes v. DSC Commc'ns Corp.*, 724 A.2d 561, 567 (Del. Ch. 1998) (holding that plaintiff was entitled to receive copies of meeting materials, including minutes of board of directors meetings).

[98] *See In re Amerisourcebergen Corp. Section 220 Litig.*, 2019 WL 589099, at *1-2 (Del. Ch. Feb. 13, 2019) (ordering production of "[o]rganizational charts or documents" as well as board materials).

Prophecy's financial condition and IDARF's investments. Those records will show the transfers, purchases and sales between the Funds, Smith, ███ and their affiliated entities and their tax treatment. Inspection of such pertinent financial information is routinely permitted in books and records actions.[99]

Lastly, because the Prophecy Funds are ████████████████ relating to Smith, and in particular following ████████ ████████ ███ ████████, there is a credible basis to believe that ████████████ may have started, and that ████████████ may have broadened. IDARF seeks copies of requests (formal and informal) received by Prophecy from any ████████ ████████████████████ thereto. These documents are necessary and

---

[99] *See DFG Wine Co., LLC v. Eight Estates Wine Holdings, LLC*, Civ. A. No. 6110-VCN, 2011 WL 4056371, at *8 (Del. Ch. Aug. 31, 2011) (granting inspection of audited and unaudited financial statements of respondent and its direct and indirect subsidiaries and inspection of respondent's general ledger); *Soleno Inc. v. Magic Sliders Inc.*, Civ. A. No. 17321, 1999 WL 959185, at *1 (Del. Ch. Sept. 27, 1999) (holding that plaintiff is entitled to inspection of partnership financial statements and federal, state and local tax returns pursuant to 6 Del. C. § 17-305), *aff'd*, 750 A.2d 530 (Del. 2000); *Henry v. Phixios Holdings, Inc.*, Civ. A. No. 12504-VCMR, 2017 WL 2928034, at *6, *12-13 (Del. Ch. July 10, 2017) (holding that plaintiff is entitled to stockholder agreements, annual, quarterly and monthly financial statements, federal, state and local income tax returns, and general ledger).

essential to understanding the scope of ████████ currently impacting the

Prophecy Funds.[100]

| Request No. | Summary of Request | Summary of IDARF's Interest as a Limited Partner |
|---|---|---|
| 1 | Organizational Documents | Necessary to understand the corporate structure and relationships in connection with investigations |
| 2 | Meeting Minutes & Resolutions | Necessary to understand the formal actions taken by Defendants with respect to at-issue conduct |
| 3 | Audited and Unaudited Financial Statements | Necessary to understand the financial condition of Prophecy Funds, treatment of issues relating to Smith and ████ |
| 4 | Monthly Statements for each sub-advisor | Necessary to understand the treatment of sub-advisors consistent with obligations under the limited partnership agreements, private placement memoranda |
| 5 | General ledgers and support for any disbursements | Necessary to understand the financial condition of Prophecy Funds, treatment of issues relating to Smith and ████ |
| 6 | 2017 and 2018 federal tax filings | Necessary to review financial condition of Prophecy Funds, treatment of issues relating to Smith and ████ |

---

[100] For the Court's convenience, Plaintiff has included charts in each section below summarizing the Demand Letter's requests for information and the reasons each category of information is necessary and essential to IDARF's proper purpose(s).

| Request No. | Summary of Request | Summary of IDARF's Interest as a Limited Partner |
|---|---|---|
| 41 | All state or federal agency subpoenas or requests, and responses thereto | Necessary to understand the extent of investigations and exposure arising out of events that culminated in the ██████ ████████████████ ████████  by Prophecy Funds |

## 2. Documents Sought in Connection with Prophecy's Relationship with Smith (Request Nos. 7-18)

IDARF has requested documents and communications concerning Smith and Broad Reach in furtherance of its proper purposes of investigating wrongdoing, mismanagement or breach of duty by Prophecy. These documents are necessary to understand the relationship between Prophecy and Smith/██████████, including (1) all investment management agreements; (2) all diligence conducted by Prophecy concerning Smith; and (3) documents concerning the financial impact on the Prophecy Funds from transactions with Smith.

In addition, IDARF requests Prophecy's communications concerning Smith since September 2018, approximately one month before ████████████████ ██████████████████████████████████████████████ ████████████████████  ████████████████  A request for email communications is proper under Section 17-305 because emails are among the

books and records of a limited partnership.[101]  Here, non-email records would be insufficient to obtain the full picture surrounding the ███████████████

████████████████████████████████████████████████

██████████ with Smith and the high probability that significant information and communications took place outside of formal partnership redemption correspondence. *Id. at 753.*  Accordingly, IDARF's request for the production of e-mail communications is necessary and essential.[102]



| Request No. | Summary of Request | Summary of IDARF's Interest as a Limited Partner |
|---|---|---|

---

[101] *See KT4 Partners LLC v. Palantir Techs, Inc.,* 203 A.2d 738 (Del. 2019) (collecting authority under Section 220).
[102] *See also Paraflon Investments, Ltd. v. Linkable Networks, Inc.,* 2020 WL 1655947, at *5 (Del. Ch. Apr. 3, 2020) (granting access to e-mail communications).

| Request No. | Summary of Request | Summary of IDARF's Interest as a Limited Partner |
|---|---|---|
| 7 | Due diligence concerning Smith | Necessary to evaluate diligence conducted on Smith by Prophecy as required under limited partnership agreements, private placement memoranda |
| 8 | Investment Management/Sub-Advisor Agreements with Smith | Necessary to investigate nature of relationship between Prophecy Funds and Smith, terms of any at-issue capital |
| 9 | Communications concerning or relating to Smith since September 2018 | Necessary to investigate Prophecy's redemption from ███████, transfer of interest in ██████████ to ████ and correspondence following Smith's arrest |
| 10 | All documents relating to the termination of Smith's relationship with the Funds; | Necessary to investigate circumstances of Prophecy's ██████████████████████ ███████████████ ████ liability arising therefrom |
| 11[103] | All documents relating to the sale of Smith's debt; | Necessary to investigate circumstances of Prophecy's ██████████████████████ ████ liability arising therefrom |

---

[103] The Court should read Request No. 11 as calling for "all documents relating to the sale of ████████████████████" and Request No. 36 as calling for "[d]ocuments sufficient to identify any [trades between or amongst Prophecy sub-advisors or third-party managers with which Prophecy had invested]." At the time the Supplemental Demand Letter was served, Plaintiff believed that ██████ █████████████████████ was a note. *See* Amended Compl. ¶¶ 27-29. Plaintiff also believed that Prophecy's capital allocations to Smith and ███ █████████ █████████████████████████████████████ ████████████████████████████████████ However, Defendants' Answer to the Amended Complaint denied that there was a Smith-related note or any sale of Smith's debt. (*See* Answer to Amended Complaint at

| Request No. | Summary of Request | Summary of IDARF's Interest as a Limited Partner |
|---|---|---|
| 12 | P&L statements relating to Smith | Necessary to investigate potential wrongdoing, mismanagement or breach of duty related to ████████ █████████ and any accounts associated with Smith. |
| 13 | Documents concerning any investigation/analysis of Smith | Necessary to investigate Prophecy's actions concerning Smith in ████ ███████████████████ ████, subsequent arrest of Smith on securities fraud charges |
| 14 | ██████████████████ ██████████████████ ████████ | ██████████████████████ ██████████████████████ ██████████████████████ █████████████████████████ █████████████████████████ ███████ |
| 15 | ██████████████████ ██████████████████ ███████████████ | ███████████████████████ ███████████████████████ ███████████████████████ █████████████████████████ █████████████████████████ █████████ |



13). Defendants also denied that Smith was ever a Prophecy sub-advisor (*see* Amended Answer to Amended Complaint at 12). Based on this, Plaintiff now understands that Prophecy invested with Smith by ████████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████ For these reasons, the Court should read Request No. 11 as calling for "all documents relating to the sale of ████████████████████████" Similarly, the Court should read Request No. 36 as calling for "[d]ocuments sufficient to identify any [trades between or amongst Prophecy sub-advisors or third-party managers with which Prophecy invested]."

54

| Request No. | Summary of Request | Summary of IDARF's Interest as a Limited Partner |
|---|---|---|
| 16 | ███████████ ████████████ ████ | █████████████ ████████████ █████████ ███████████ ██████ |
| 17 | ████████████ █████ | ██████ ███████ █████████ █████████ ████████ █████████ |
| 18 | █████████ | █████████ ██████████ ████████ ████████ ██ |

**3. Documents Sought in Connection with Prophecy's** ████████ ███ █████ ██████████ **(Request Nos. 13-18 and 21-27)**



Similar to the requests above, IDARF is entitled to documents to enable it to

understand the facts concerning: (1) Prophecy's ████████████████

██████████████████████████████████

████████████████████ ███████████████████

███████████████████████████████████

██████████████████████████████████

████████████████████████ Defendants have

refused to provide IDARF with any documents relevant to these requests.

55

| Request No. | Summary of Request | Summary of IDARF's Interest as a Limited Partner |
|---|---|---|
| 13-18 | *See supra* | |
| 21 | Communications with Deloitte concerning 2017-2019 audits ██████████████████ ████████ | ██████████████ ████████████████ ████████████████████████ ████████████████████████ ████████████████████ |
| 22 | SEC filings regarding ████ ██████████████████ | [*Plaintiff withdraws this request.*] |
| 23 | All public announcements or communications with Limited Partners ██████████████ | Necessary to understand Prophecy's communications concerning these events to all relevant parties |
| 24 | Deloitte reports/letters (2017-2018) | Necessary to investigate potential wrongdoing, mismanagement or breach of duty ███████████ ████████████████████ ██████████ subsequent failure to provide limited partners with audited 2018 and 2019 financials. |
| 25 | ██████████████████████ ██████████████████ with PTA and PSO; | [*Plaintiff withdraws this request.*] |
| 26 | Deloitte invoices (2017-present) | Necessary to understand Deloitte's interaction with Prophecy management, cooperation of Prophecy in Deloitte's audit exercises |
| 27 | Audit committee minutes (2017-present) | Necessary to investigate Prophecy's interactions with Deloitte ████████ ████████████████████ ████████████████████████ ██████████ |

**4. Documents Sought in Connection with Prophecy's Relationship with ▉▉▉ ▉▉▉ (Request Nos. 19-20 and 28-40)**

IDARF has requested documents concerning the relationship ▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉, which served as sub-advisors of PTA and PSO. Specifically, the Demand seek the production of the Prophecy Funds' compliance manual and risk policies (Request Nos. 19-20), in order to establish what *should* have been done with respect to ▉▉▉ role as a sub-advisor of the Prophecy Funds. IDARF also seeks documentation related to Prophecy's allocations to ▉▉▉▉▉▉▉▉▉ of the Prophecy Funds, including (1) copies of advisor agreements (Request Nos. 28, 30); (2) due diligence conducted concerning ▉▉▉ (Request No. 29); and (3) ▉▉▉▉▉▉▉▉▉▉▉ (Request Nos. 30-35). [104]  These documents are necessary to understand how, if at all, ▉▉▉ satisfied the basic requirements to serve as a sub-advisor for the Prophecy Funds.

In addition, IDARF seeks communications between Defendants ▉▉▉ concerning any agreements or arrangements between them, as well as any communications concerning the claims ▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

---

[104] Prophecy has informally provided copies of select documents in these categories to IDARF, subject to an onerous non-disclosure agreement that prohibits any meaningful use of the documents or the information contained in them.

██████████████████████████████ These documents are necessary to understand ███████ relationship with the Prophecy Funds.

Lastly, IDARF seeks ████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████████ ████████ ████████████████████████████████████████ ██████████████████████████████████████ ████████ These documents are critical to helping Plaintiff understand the likely impact on its substantial capital investment, and to investigate potential wrongdoing, mismanagement or breach of duty related to Prophecy's ████████████████████ █████████████████████████████████████.

| Request No. | Summary of Request | Summary of IDARF's Interest as a Limited Partner |
|---|---|---|
| 19 | All versions of Compliance Manual (2017-present) | Necessary to understand Prophecy's internal policies and procedures with regards to compliance issues |
| 20 | Risk and Concentration Policies & Procedures | Necessary to understand Prophecy's internal policies and procedures concerning risk management and concentration limits, which appear to have been violated in connection with Prophecy's relationship with ██████ |

| Request No. | Summary of Request | Summary of IDARF's Interest as a Limited Partner |
|---|---|---|
| 28 | Investment Management/Sub-Advisor Agreements with █████ | Necessary to investigate potential wrongdoing, mismanagement or breach of duty related to sale of interest in ████████████████, acceptance of ████████████ ████████, and ██████████████ ████████ |
| 29 | Due diligence concerning █████ | Necessary to investigate potential wrongdoing, mismanagement or breach of duty related to ██████████ ██████████████████ ██████████████████ ██████████ ██████████ ████████ |
| 30 | All agreements or other documentation regarding any assets, including publicly-traded securities, purchased ████████ relating in any way to the Funds; | Necessary to investigate potential related party and/or questionable transactions arising out of Prophecy's ██████████ ██████████████████ ████████ |
| 31 | Communications between █████ and Prophecy relating to █████ and/or transactions | Necessary to investigate potential related party and/or questionable transactions arising out of Prophecy's ██████████ ██████████████████ ████████ |
| 32 | Documents reflecting ████████ ████████ | Necessary to investigate Prophecy's diligence in ensuring ██████████████████ ██████████████████ ██████████████████ ████████ for benefit of fund investors |

| Request No. | Summary of Request | Summary of IDARF's Interest as a Limited Partner |
|---|---|---|
| 33 | Communications ██████ ████████████ | Necessary to investigate Prophecy's diligence in ensuring ████████████████████ ██████████████████ ██████ for benefit of fund investors |
| 34 | Documents identifying █████ ████████████ | Necessary to investigate Prophecy's diligence in ensuring ████████████████████ ██████████████████ ██████ for benefit of fund investors |
| 35 | Communications with ████ ███████████████████ | Necessary to investigate Prophecy's diligence in ensuring ████████████████ ██████████████████ ████████████ or benefit of fund investors |
| 36[105] | Documents concerning any cross-trades between the Prophecy Funds | Necessary to investigate potential related party and/or questionable transactions arising out of Prophecy's ██████████ ██████████████ ████████ |
| 37 | ███████████████████ | Necessary to investigate potential wrongdoing, mismanagement or breach of duty related to acceptance ██████ ██████████████████ █████████████████ ██████ |

---

[105] *See* supra, note 103.

| Request No. | Summary of Request | Summary of IDARF's Interest as a Limited Partner |
|---|---|---|
| 38 | ████████████████████ | Necessary to investigate potential wrongdoing, mismanagement or breach of duty related to acceptance ████████ ██████████████████████ ████████████████████ ██████ |
| 39 | ██████████████████████ ████████████████ | Necessary to investigate potential wrongdoing, mismanagement or breach of duty related to acceptance ████████ ████████████████████████ ████████████████████████ ██████ |
| 40 | ██████████████████████ ████████████████ | Necessary to investigate potential wrongdoing, mismanagement or breach of duty related to acceptance ████████ ████████████████████████ ████████████████████ ██████ |

**5. Documents Sought in Connection with the** ████████████████████████████████ **(Request Nos. 28-40)**

Plaintiff has requested documents concerning ████████████████ with

Defendants as well as ████████████████████████████████

████████ to the Prophecy Funds. Defendants are the only source of the requested

documents ████████████████ as to whom IDARF has no informational rights.  For

the reasons explained in detail in the foregoing sections, each of these categories of

61

documents is necessary and essential to Plaintiff's proper purpose of investigating

potential misconduct, mismanagement or breach of duty by Prophecy.

| Request No. | Request | IDARF's Interest as a Limited Partner |
|-------------|---------|---------------------------------------|
| 28-40 | *See supra* | |

## <u>CONCLUSION</u>

For the foregoing reasons, IDARF respectfully requests that the Court enter

an Order requiring Defendants to permit IDARF and/or its attorneys to inspect and

copy the books and records described herein and in IDARF's Demand Letters.


MORRIS, NICHOLS, ARSHT
  & TUNNELL LLP

*/s/ R. Judson Scaggs, Jr.*

OF COUNSEL:

E. Scott Schirick
Marion R. Harris
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
(212) 421-4100

Dated:        August 1, 2020

R. Judson Scaggs, Jr. (#2676)
Aubrey J. Morin (#6568)
1201 N. Market Street
Wilmington, DE  19801
(302) 658-9200

Words: 13,745

62