UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
                                                       :
IMG MEMORIAL FUND 1, LLC,                              :
                                    Plaintiff,         :
                                                       :          21 Civ. 3263 (LGS)
               -against-                               :
                                                       :          OPINION AND ORDER
FIRST LANDING FUND, LLC, et al.,                       :
                                                       :
                                    Defendants.        :
--------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

        Plaintiff IMG Memorial Fund 1, LLC, brings this securities fraud action against

Defendants First Landing Fund, LLC ("First Landing"), Vantage Consulting Group, Inc.

("Vantage"), Prophecy Special Opportunities Fund, LP ("Prophecy LP"), Prophecy Special Ops

GP, LLC ("Prophecy GP"), Mark T. Finn, David P. Schippers and Jeffrey Spotts.  The First

Amended Complaint ("Complaint") alleges violations of § 10(b) of the Exchange Act, 15 U.S.C.

§ 78j(b), and Rule 10b-5, § 20(a) of the Exchange Act, breach of fiduciary duty and negligent

misrepresentation.  Defendants filed two motions to dismiss the Complaint pursuant to Federal

Rules of Civil Procedure 9(b) and 12(b)(6).  For the reasons stated below, the motions are

denied.

## I.      BACKGROUND

        The following facts are taken from the Complaint and are assumed to be true for

purposes of this motion.  *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959

F.3d 509, 512 (2d Cir. 2020).

        Jeffrey Spotts established an investment fund referred to as Prophecy Trading Advisors

around 2011.  The fund was designed to provide a trading platform for traders, referred to as

"sub-advisors," to implement leveraged trading strategies using fund capital while subject to ongoing monitoring and risk controls implemented by Prophecy.

In 2015, Vantage became a partner in the Prophecy Trading Advisors Fund.  Vantage split an advisory fee with Prophecy Trading Advisors GP in exchange for funneling capital to Prophecy Trading Advisors through a fund called First Landing.  A second fund, Prophecy LP, provided capital for the platform beginning around 2019.  Sub-advisors trading on Prophecy LP capital were not required to post collateral but were responsible for any losses incurred from their strategies.

In 2019, one of Prophecy's subadvisors was charged criminally and civilly with perpetrating a multimillion-dollar Ponzi scheme.  Around that time, Prophecy began allocating a vast majority of the capital in its two funds to a single sub-advisor, Brian Khan, who lost a substantial amount of fund assets in the market turmoil of February and March 2020.

Plaintiff is an Indiana limited liability company with a principal place of business in Pennsylvania.  In the fall of 2017, Plaintiff invested $2.6 million in First Landing based in part on reliance upon the First Landing fund summary prepared and distributed by Vantage.  The summary discussed, among other things, the importance of risk management to First Landing and Prophecy, risk limits set by Prophecy, real-time monitoring of individual sub-advisors and the added layer of "risk monitoring oversight" provided by First Landing.

In the fall of 2019, Plaintiff invested $900,000 in the Prophecy LP.  Plaintiff relied on representations in the Prophecy LP Fund summary.  The summary, among other things, explained that risk is monitored and enforced by an in-house risk desk that has transparency on allocations of each sub-advisor and that the desk "operated with systematic controls that mitigate risk" and "conducts back-end analysis to monitor risk on each" sub-advisor portfolio.

2

## II.    STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F3d 183, 189 (2d Cir. 2020).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] [plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).  To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).

## III.    DISCUSSION

### A.    Violation of § 10(b) and Rule 10b-5

The Complaint sufficiently alleges securities fraud under § 10(b) and Rule 10b-5 against Vantage, First Landing, Prophecy LP and Prophecy GP.  Defendants argue that the Complaint fails to allege a fraudulent statement with specificity, scienter and reliance.  These arguments are unavailing.

To state a claim under § 10(b) and Rule 10b-5, "a plaintiff must allege that each defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021).

"A complaint alleging securities fraud must also satisfy heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (PSLRA)." *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 75 (2d Cir. 2021). The heightened pleading standard of Rule 9(b) requires: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

The PSLRA expanded on Rule 9(b)'s pleading standard, requiring that securities fraud complaints "specify" each misleading statement; that they set forth the facts "on which [a] belief" that a statement is misleading was "formed" and that they "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §§ 78u-4(b)(1), (2). "A complaint will survive 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 212 (2d Cir. 2020) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007)).

"To establish scienter, a complaint may (1) allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness, or (2) allege facts to show that defendants had both motive and opportunity to commit fraud." *Set Cap. LLC*, 996 F.3d at 78

(internal quotation marks omitted).  The sufficiency of a complaint's allegations of scienter are evaluated "'holistically' considering 'all of the facts alleged, taken collectively,' rather than 'any individual allegation, scrutinized in isolation.'"  *Id.* (quoting *Tellabs, Inc.*, 551 U.S. at 323, 326).  "For an inference of scienter to be strong, as required by the PSLRA, a reasonable person must deem it cogent and *at least as compelling* as any opposing inference one could draw from the facts alleged."  *Id.* (internal quotation marks omitted).  "In the securities fraud context, recklessness must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care, not merely a heightened form of negligence."  *In re Advanced Battery Techs., Inc.*, 781 F.3d 638, 644 (2d Cir. 2015) (citations and internal quotation marks omitted); *accord Gray v. Alpha & Omega Semiconductor, Ltd.*, No. 20 Civ. 2414, 2021 WL 4429499, at *10 (S.D.N.Y. Sept. 27, 2021).

"Where a defendant is a corporation, [the scienter requirement] requires pleading facts that give rise to a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter."  *Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020) (internal quotation marks omitted).  "[M]ost courts look to the discrete roles played by the corporate actors who are connected to the alleged misrepresentation to determine which (if any) fall within the locus of a company's scienter."  *Id.*  "Under this approach, the most straightforward way to raise a strong inference of corporate scienter is to impute it from an individual defendant who made the challenged misstatement."  *Id.* (internal quotation marks omitted).  But, "[i]n exceedingly rare instances, a statement may be so dramatic that collective corporate scienter may be inferred."  *Id.* at 99 (internal quotation marks omitted).

"In a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible."  *In re*

*DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009); *accord In re Wells Fargo & Co. Secs. Litig.*, No. 20 Civ. 4494, 2021 WL 4482102, at *27 (S.D.N.Y. Sept. 30, 2021).  "This can consist of allegations as to who possessed . . . knowledge of the fraud, when and how they obtained [that] knowledge, or even why they should have known of the fraud."  *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d at 695 (alteration in original) (internal quotation marks omitted).

### 1. Actionable Misrepresentation or Omission

The Complaint alleges that statements by Defendants Vantage, First Landing, Prophecy LP, and Prophecy GP, were false.  At least some of the statements are actionable misrepresentations sufficient to sustain the securities fraud claim.

#### a. Vantage and First Landing

The Complaint alleges that as to Vantage and First Landing, Vantage's fund summary provided that Vantage "performs quantitative factor attribution analysis, maintains a monthly crash risk rating, and algorithmically attempts to detect any significant collective erosion of manager skill or increased downside risk to the portfolio," that Vantage "serves as an additional layer of oversight with real-time access to the [Prophecy] Platform's portfolio of holdings" and that "[a]ll managers invest via a common trading platform monitored and controlled by Prophecy risk desks in multiple locations."  Vantage also represented that it sits on the Investment Committee for the Prophecy Platform and "works with the Platform to source and approve new [sub-advisors]."  Vantage represented that "[i]t has built considerable risk monitoring systems related to the Prophecy Platform."  The Complaint alleges these statements were false when made because Vantage did not have real-time access to the portfolio.  The Complaint bases this claim on comments from Vantage in a verified complaint filed in the

Delaware Court of Chancery on June 26, 2020.  In that verified complaint, Vantage stated that it has "little to no information concerning the state of the Prophecy Funds' investments."  Further, the Complaint in the instant case alleges, with particularity, that Spotts and Prophecy itself did not have transparency into its sub-advisors' trading activity.  Based on these allegations, the Complaint alleges that Vantage and First Landing did not have access to the level of information about Prophecy they claimed to have and did not conduct the monitoring they claimed to perform.

Vantage and First Landing contend that the allegations do not point to an actionable misstatement because nothing in the Delaware complaint supports an inference that the purported misstatements were false when made.  Vantage and First Landing's falsity argument is unavailing because the allegations in the Delaware complaint support an inference that Vantage and First Landing did not have the risk monitoring capabilities and access to information that they claimed to have when soliciting investors.  For example, in addition to the allegations discussed above, the Delaware complaint supports an inference that one of the core risk mitigation functions of the fund was not monitored by Vantage and First Landing.  The Fund Summary includes a slide deck that illustrates the impact of Prophecy's loss mitigation policy through the management of risk across different subadvisors.  The chart shows one subadvisor experiencing a loss but that loss being offset by gains experienced by other subadvisors.  The Delaware complaint supports an inference that Prophecy was able to abandon this model completely by putting all of its assets into the hands of a single subadvisor unbeknownst to, and in spite of, the monitoring capabilities of Vantage and First Landing.  It is reasonable to infer from this that Vantage and First Landing were not able to or did not monitor risk as they stated in their fund summary when soliciting Plaintiff to make an investment.

### b. Prophecy LP and Prophecy GP

The Complaint alleges that Prophecy LP stated in a Fund summary that risk for the Prophecy fund "is monitored and enforced by a dedicated in-house risk desk that has transparency on allocations of each sub-advisor," and that the "desk operates with systematic controls that mitigate risk for each sub-advisor and also conducts back-end analysis to monitor risk on each sub-advisors' current portfolios." The Complaint alleges that Prophecy GP disseminated the materials containing that statement. The Complaint alleges the statement is false because later statements by First Landing and Prophecy LP show "there was a complete lack of risk controls or ability to monitor risk or exercise stop-losses." The Complaint alleges that the Defendants did not ensure the investments were transparent and "had no means of implementing systematic risk controls." The Complaint alleges that, based in part on comments made by Spotts, Prophecy could not prepare a net asset value statement or provide audited financial statements for Prophecy LP because the sub-advisor making the investments was not providing statements.

Prophecy LP and Prophecy GP contend that the aforementioned allegations do not plead a claim because (1) they do not plead any statements by Prophecy LP or GP and (2) no statement by Prophecy was false when made. The first argument is unfounded because it ignores the allegations directly quoted from Prophecy's fund summary and focuses instead on separate statements by Vantage. Further, although Prophecy GP is alleged only to have disseminated the false statement, it can be liable under § 10(b) for that act. *Lorenzo v. SEC*, 139 S.Ct. 1094, 1100 (2019) (holding that "dissemination of false or misleading statements with intent to defraud can fall within the scope of subsections (a) and (c) of Rule 10b-5"). As to the second argument, just as with the Vantage statements, the allegations in the Complaint support an inference that the

statements by Prophecy were false when made.  The allegations provide that Prophecy was unable to determine the value of its assets in 2020.  From this allegation it is reasonable to infer that, if Prophecy could not value its assets, it was not able to or did not monitor the risks of its investments and that it did not have the level of controls in place that it claimed to maintain.

### c.  Reliance

Defendants' reliance arguments are unavailing.  Both Vantage and Prophecy argue that language in their respective investment agreements prevents Plaintiff from relying on the statements in the fund summaries.  The language in both relevant agreements states that Plaintiff, in deciding to invest, relied "solely" upon the relevant operating or partnership agreement and offering memorandum and "independent investigations made by the [Plaintiff]."  Nothing in the agreements restricts Plaintiff's independent investigation from extending to information provided by Defendants in other documents, such as the fund summaries.

A general disclaimer "is not sufficient as a matter of law to preclude reasonable reliance on material factual misrepresentations, even by a sophisticated investor."  *FIH, LLC v. Found. Cap. Partners LLC*, 920 F.3d 134, 141 (2d Cir. 2019).  This case is analogous to the situation in *Caiola v. Citibank, N.A.*, 295 F.3d 312, 330-31 (2d Cir. 2002).  In *Caiola,* the Second Circuit rejected Citibank's argument that Caiola could not rely on oral representations Citibank made about its risk controls where the relevant agreement between the parties stated Caiola "is not relying on any advice, statements or recommendations (whether written or oral) of the other party."  *Id.* at 317-18, 330.  The Second Circuit held that "[a] disclaimer is generally enforceable only if it tracks the substance of the alleged misrepresentation."  *Id.* at 330 (internal quotation marks omitted); *accord FIH, LLC*, 920 F.3d at 141-142.  Here the disclaimer was general in nature and did not address any specific topic or misrepresentation.

Defendants' argument based on *San Diego County Employees Retirement Ass'n v. Maounis*, 749 F. Supp. 2d 104 (S.D.N.Y. 2010) is unavailing because there, the agreement "loudly and repeatedly warn[ed] investors . . . that [defendant] and its personnel entertain wide discretion and are bound by no requirements of diversification or risk control," *id.* at 122. Defendants do not point to any similar disclaimer here.  *Walsh v. Rigas*, No. 17 Civ. 4089, 2019 WL 294798 (S.D.N.Y. Jan. 23, 2019) is also not analogous because there, the disclaimer did not mention any investigation by the plaintiff, *id.* at *3.  As other courts in this District have recognized, where a plaintiff is permitted to conduct an independent investigation, a defendant cannot argue that the plaintiff unreasonably or impermissibly relied on information the defendant supplied outside of the offering or subscription agreement and memorandum.  *See In re Allianz Glob. Invs. U.S. LLC Alpha Series Litig.*, No. 20 Civ. 10028, 2021 WL 4481215, at *32 (S.D.N.Y. Sept. 30, 2021); *Heller v. Goldin Restructuring Fund, L.P.*, 590 F. Supp. 2d 603, 615 (S.D.N.Y. 2008).

Vantage and First Landing's argument that the summary they provided advised Plaintiff that "[a]ny investment decisions should be based only on the information in the Offering Documents" so the summary cannot be the basis for a securities fraud claim is unavailing. Nothing in the Offering Documents legally precludes Plaintiff from relying on the fund summary, as discussed above, and the general advice in the summary about what Plaintiff "should" consider when making their investment decisions does not preclude Plaintiff from relying on the information provided by Vantage and First Landing.

## 2.  Scienter

The Complaint alleges facts that give rise to the requisite "strong inference of scienter." *See Set Cap. LLC*, 996 F.3d at 78.  To plead scienter, a complaint may either "(1) allege facts that

constitute strong circumstantial evidence of conscious misbehavior or recklessness, or (2) allege facts to show that defendants had both motive and opportunity to commit fraud." *Id.* "A complaint will survive 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 212 (2d Cir. 2020) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)). Plausible allegations that a defendant "knew facts or had access to information suggesting that their public statements were not accurate" supports an inference of conscious misbehavior or recklessness. *Set. Cap. LLC*, 996 F.3d at 79.

Here, the Complaint alleges facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness as to each § 10(b) Defendant. The Complaint alleges that Vantage and First Landing stated that they provide a layer of oversight with real-time access to the Prophecy platform's portfolio and perform analysis to detect increased downside risk to the portfolio, and that Vantage and First Landing knew that these statements were false when made. Because the statements relate to Vantage and First Landing's own conduct, they knew or should have known that their statements were inaccurate. The Complaint alleges that Prophecy GP and Prophecy LP stated or disseminated statements that they had transparency into subadvisors' accounts and controlled for risks, while knowing that those statements were not true. By virtue of their roles, both Prophecy GP and Prophecy LP knew or should have known the facts related to the operation of the platform and any limitations on their control of sub-advisors and risks related to sub-advisors' trading strategies.

### 3.  Loss

Vantage and First Landing's loss argument is unsupported.  They argue that Plaintiff has no basis to allege it suffered any losses in connection with its claim.  But the Complaint alleges that a Prophecy sub-advisor lost hundreds of millions of dollars, that Plaintiff's demand to redeem its shares was denied and that Plaintiff has lost in excess of $4 million.

### B.      Violation of § 20(a)

The Complaint pleads § 20(a) claims against Finn, Schippers and Spotts.  To state a claim under § 20(a), a plaintiff must allege "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud."  *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014); *accord UA Local 13 Pension Fund v. Sealed Air Corp.*, No. 19 Civ. 10161, 2021 WL 2209921, at *8 (S.D.N.Y. June 1, 2021).

Defendants Finn, Schippers and Spotts's arguments that the Complaint does not allege they were culpable participants in the controlled persons' fraud is unsupported.  The Complaint alleges that Finn "was responsible for the risk management of capital invested in First Landing and representations made by Vantage and the First Landing fund."  The Complaint alleges that Schippers oversaw fund operations of First Landing, "exercises co-control over the First Landing Fund" and was "responsible for all representations made by Vantage and First Landing Fund."  The Complaint and exhibits attached to it allege that Spotts is the Managing Member of Prophecy GP, that he transmitted correspondence on behalf of the fund and that he is listed on the Fund Summary as the relevant contact person and that he controlled the representations in the Fund summary.  These allegations are sufficient for control person liability because they

allege control by Finn, Schippers and Spotts, and culpable participation in the fraud based on the allegations that Finn, Schippers and Spotts were responsible for the allegedly false representations.

### C.    Breach of Fiduciary Duty

The Complaint pleads direct claims for breach of fiduciary duty against Vantage and Prophecy GP.  Both Vantage and Prophecy GP argue that Plaintiff cannot bring a breach of fiduciary duty claim against them because Plaintiff alleges no individualized harm and therefore cannot plead a direct claim.  Vantage subsequently raised additional arguments in its reply memorandum of law, including that the alleged omissions in relation to the breach of fiduciary duty are actually misstatements and that no relevant duty is owed by Vantage to its members. The Court declines to consider the arguments raised for the first time in the reply.  *See Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 305 n.2 (2d Cir. 2020); *Fantasia v. Montefiore New Rochelle*, No. 19 Civ. 11054, 2022 WL 294078, at *9 n.4 (S.D.N.Y. Feb. 1, 2022).  For the reasons stated below, the breach of fiduciary duty claims against Vantage and Prophecy GP are properly pleaded as a direct claim.

The question of whether a claim is derivative or direct is one of state law.  *Seibel v. Frederick*, No. 20 Civ. 2603, 2020 WL 1847792, at *3 (S.D.N.Y. Apr. 13, 2020) (collecting cases).  Under Delaware law,[1] "the determination of whether a stockholder's claim is direct or derivative must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the stockholders, individually); and (2) who would receive the benefit of any

---

[1] Delaware law applies because both parties rely on Delaware law in discussing Plaintiff's breach of fiduciary duty claim against Vantage.  *See Arch Ins. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (applying New York law where the parties' memoranda of law assume that New York law governed the issues); *Rye Ridge Corp. v. Cincinnati Ins.*, 535 F Supp. 3d 250, 253 n.1 (S.D.N.Y. Apr. 23, 2021).

recovery or other remedy (the corporation or the stockholders, individually)?" *Brookfield Asset Mgmt. v. Rosson*, 261 A.3d 1251, 1263 (Del. 2021) (internal quotation marks omitted).

Here, the Complaint alleges that Plaintiff would have withdrawn its investment had Vantage or Prophecy GP disclosed that it was not able to maintain risk controls as represented, either at the time of the investment or thereafter.  Vantage and Prophecy GP do not argue that the benefit of recovery on this claim would not go to Plaintiff.  The claim is direct under Delaware law because the Complaint alleges a direct injury to Plaintiff's right to withdraw its investment. *See Sehoy Energy LP v. Haven Real Est. Grp., LLC*, No. 12387, 2017 WL 1380619, at *9-10 (Del. Ch. Apr. 17, 2017) (holding claim that defendants breached their fiduciary duty of loyalty by disseminating false and misleading disclosures, which limited plaintiffs' right to withdraw, is direct); *see also McBeth v. Porges*, 171 F. Supp. 3d 216, 232 (S.D.N.Y. 2016) (applying Delaware law and holding that "to the extent Plaintiff alleges that he would have withdrawn his money had he received adequate information from Defendants . . . his claim is direct").

Prophecy GP misconstrues Plaintiff's claim as one based on mismanagement to argue that it is derivative.  Unlike the derivate claim in *San Diego County Employees Retirement Ass'n v. Maounis*, 749 F. Supp. 2d 104, 126-27 (S.D.N.Y. 2010), Plaintiff's claim does not allege reckless mismanagement of the fund's trading activities.

Prophecy GP's remaining arguments in support of its motion to dismiss the breach of fiduciary duty claim are unavailing.  First, Prophecy GP argues that Plaintiff's claim does not meet the heightened pleading standard of Rule 9(b) for the same reasons the Complaint does not plead scienter with the required particularity for the § 10(b) claim.  Even if Rule 9(b) applies to the breach of fiduciary duty claim, the Complaint pleads the common law claims with

particularity for the same reasons that it pleads scienter for the § 10(b) claim with the required particularity.

Second, Prophecy GP's argument that the fiduciary duty claim against it should be dismissed for failure to allege gross negligence is unsupported.  The Complaint alleges grossly negligent misrepresentations by alleging that Prophecy GP failed to disclose that either it could not monitor risk in the way it represented it could and would.

Third, Prophecy GP's reliance and falsity arguments are also unavailing.  Prophecy GP argues that Plaintiff disclaimed reliance on the allegedly false misstatement, no statement was false when made and that there were no omissions.  But, as stated above, Plaintiff has not disclaimed reliance on the relevant statements, and the Complaint adequately alleges falsity and omissions regarding the risk monitoring capabilities of Prophecy GP.

### D.    Negligent Misrepresentation

The Complaint adequately pleads negligent misrepresentation.  Both Vantage and Prophecy GP move to dismiss the negligent misrepresentation claims against them for the same reasons they move to dismiss Plaintiff's securities fraud claims.  For the same reasons that dismissal of the securities fraud claims is unwarranted, dismissal of the negligent misrepresentation claims is unwarranted.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are DENIED.  Defendants' requests for oral argument are DENIED as moot.

The Clerk of Court is respectfully directed to close the motion at Dkt. Nos. 53 and 57.

Dated: March 18, 2022
New York, NY

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

15